## MESLER vs. McCLURE.

LIQUOR LICENSE: *In what funds payable in Sebastian county.*

County warrants issued by Sebastian county, prior to the division thereof into two districts, are receivable for license and dues accruing to either district.

APPEAL from Sebastian Circuit Court.

Hon. W. W. MANSFIELD, Circuit Judge.

*Yonley* for appellant.

*Hughes,* Attorney General, *contra.*

WALKER, J.:

Mesler filed in the Circuit Court of Sebastian county his petition against McClure, with a prayer for a writ of mandamus to compel him, as clerk of the County Court of said county, to issue to petitioner a license to keep a dram shop in the city of Fort Smith.

A demurrer was sustained to the petition, and judgment rendered against Mesler, from which he has appealed to this court.

The facts set forth in the petition are conceded to be sufficient to entitle the petitioner to the relief sought, if the payment of the $100 tax was in such funds as the county was by law bound to receive.

The court to whom the application was first made accepted and approved Mesler's bond as sufficient, but refused to receive county scrip or warrants in payment. Afterwards, and in vacation, Mesler paid the tax in Sebastian county scrip to the sheriff of the county, and took his receipt for the same, which he presented to McClure, the clerk, and demanded of him to issue to him a dram shop license. But McClure refused to issue the license, because he did not recognize a payment in Sebastian county scrip as valid.

To compel him to do so the writ of mandamus was asked.

It appears that as a matter of convenience to the citizens of Sebastian county, it was, by an act of the Legislature, approved April, 1875, divided into separate judicial districts.

Section 10 of this act provides, " That said districts shall respectively defray all the expenses of holding courts, opening and repairing highways, building bridges, providing for paupers, erecting public buildings, and all other county expenses accruing within and on account of their respective districts, as if separate and distinct counties : *Provided*, that nothing in this act shall be so construed as to release either or both of said districts from any liability heretofore incurred by said county of Sebastian : *Provided, further*, that neither of said districts shall, from and after the districts shall be established, be liable for any debt or liability that may be thereafter incurred by either."

The territorial limits of the county are embraced in the two districts, all of the county revenue collected within them. They are declared to be separate in the support of their respective districts, the laws to be administered in each over the inhabitants

of the districts separately. To do this, each claims the revenue collected in its own district. But under an express *proviso* which recognizes the existence of an outstanding county debt, and the liability of either or both of the districts to pay, no construction was to be given to the act of separation which was to release "either, or both of the districts from liability to pay this outstanding debt. In other words, that this liability was to remain against them, or either of them, just as it did against the county had no act of separation been made. The prior liability of the county was, that the county should receive her scrip or warrants in payment of "taxes and debts accruing to the county, made so expressly by statute." Gantt's Digest, sec. 210.

At the time separate districts were formed, this scrip was good in payment for a dram shop license; the same law was being enforced in the districts, and we do not think the obligation to receive such scrip was impaired by force of the act of separation.

In this instance, it is true that the Fort Smith district was contracting with one of its citizens for a privilege to be exercised within its territorial limits, and may have desired to use the sum received, in liquidation of her district indebtedness, but the question is, can the district do this, without impairing the obligation of the county to receive her outstanding indebtedness in payment of debts; can the district stand in a better condition than the county could, after it had assumed the liability to pay? We think not.

Whatever may be the effect of the provisions of the constitution of 1874 and of the act of 1875 made under its authority, in other respects, it is evident that no act providing for separate districts, or for the collection and distribution of the revenue collected in them, can so divert the revenue, so collected from the outstanding indebtedness of the county, incurred before the passage of such act, as to release the county from its obligation to pay them. To do this is, in effect, repudiation, which

upon a fair consideration of the act of 1875 was not intended.

In holding as we must do, that the districts are bound to re-ceive the county scrip and warrants of the county, issued prior to the act dividing the county into districts, we are not unmind-ful of the difficulty which may arise, should one of the districts be called on to pay more of such debt than would amount to a proper charge upon the tax payers of the district so making pay-ment. Should such be the case, an equitable obligation will rest upon the district which may discharge a less amount of this out-standing debt than it should do, estimating the amount to be paid by the amount of the revenue collected in each, to pay its due proportion.

But whatever difficulties may arise under the anomalous act, creating two districts in one county, charged with the administra-tration of the laws, and the support of district government we must hold them liable to pay this county debt, and to receive the outstanding scrip of the county in payment of the same.

The court below erred in refusing to grant a mandamus to compel the clerk to receive such scrip in payment for the dram shop license as asked by the petitioner.

Let the judgment be reversed and the cause remanded.